UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MARIE MACIEJEWSKI,             :

      Plaintiff,              :       CIVIL ACTION NO. 3:08-2214

      v.                      :       (MANNION, M.J.)

COMMUNITY BANK & TRUST         :
COMPANY,
                              :
      Defendant.

**<u>MEMORANDUM AND ORDER</u>**[1]

Pending before the court is a motion for summary judgment on behalf of defendant Community Bank & Trust Company ("Bank"). (Doc. No. 29). For the reasons set forth below, the defendant's motion will be **GRANTED**.

**I.    FACTS AND PROCEDURAL BACKGROUND**

The plaintiff was employed by the Bank at the Clifford, Pennsylvania branch location from 1980 to 2008. (Doc. No. 1 at ¶¶9-10). From 1991 through 2008, the plaintiff held the position of Head Teller, and allegedly performed her duties without any discipline whatsoever. *Id.* at ¶10. More specifically, the plaintiff alleges that she never encountered any difficulty with

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

any of the branch managers. *Id.* at ¶¶14-15.

On January 9, 2008, the plaintiff's employment at the Bank was terminated. *Id.* at ¶¶11-12. Specifically, Janice Bevacqua, the Branch Manager, allegedly told the plaintiff that she was being terminated because, on prior occasions, the Board President was forced to reprimand her. *Id.* However, the plaintiff alleges that this statement was "totally and completely false and fabricated." *Id.* at ¶12.

After her discharge, the plaintiff requested a copy of her complete personnel file. *Id.* at ¶13. A review of her file allegedly revealed that there was only one reference to any disciplinary activity, namely a contrived accusation of wrongdoing involving a bank customer which defendant relied upon to discharge her.[2] *Id.*

Based on the foregoing, on December 10, 2008, the plaintiff commenced this action by filing a complaint against the defendant Bank. (Doc. No. 1). Specifically, the plaintiff claims that her discharge was in violation of the ADEA as she was fifty-seven (57) years old when her

---

[2] In October of 2008, the President of the defendant's operations allegedly made a statement which concerned his intent to terminate three Bank employees, including plaintiff. *Id.* at ¶16. All three individuals he was referring to were allegedly in the class protected by the Age Discrimination in Employment Act ("ADEA"). *Id.* As such, the plaintiff believes that the single incident in her personnel file was used to disguise his intention to terminate plaintiff. *Id.*

employment at the Bank was terminated. *Id.* Consequently, the plaintiff seeks both monetary and injunctive relief. *Id.* at 6.

On May 6, 2011, the defendant filed a motion for summary judgment that was accompanied by a brief in support and a statement of material facts. (Doc. No.'s 29, 30, & 31). On May 23, 2011, the plaintiff filed a motion for an extension of time to reply to defendant's motion for summary judgment, (Doc. No. 33), and, on May 24, 2011, the undersigned issued an order that extended plaintiff's time to reply until June 9, 2011, (Doc. No. 34). On June 9, 2011, the plaintiff filed a second motion for an extension of time to reply to defendant's motion for summary judgment, (Doc. No. 35), and, on June 13, 2011, the undersigned issued an order that extended plaintiff's time to reply until July 1, 2011, (Doc. No. 36). On June 30, 2011, the plaintiff filed a third motion for an extension of time to reply to defendant's motion for summary judgment, (Doc. No. 37), and, on July 1, 2011, the undersigned issued an order that extended plaintiff's time to reply until July 15, 2011, (Doc. No. 38). As of the date of this memorandum, the plaintiff has failed to file any reply to the defendant's motion for summary judgment. Thus, in accordance with Local Rule 7.6, the defendant's motion for summary judgment is deemed unopposed.

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate if the "pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

4

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).[3]

---

[3] If the non-moving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar

### III. UNDISPUTED STATEMENT OF MATERIAL FACTS[4]

In 2007, the main office of the Bank was located in Clarks Summit, Pennsylvania, and the President of the Bank was William F. Farber, Sr. At that time, the Bank had about fifteen (15) satellite branches, including a branch location in Clifford, Pennsylvania.

During 2007, it became apparent to the Bank's main office, including the Bank's President, that the Clifford Branch had numerous problems. Specifically, the Clifford branch had performance deficiencies, customer complaints and poor employee attitudes. As such, Mr. Farber found that the Bank received more complaints on the Clifford branch than on the remaining fourteen branches combined.

As a result of the problems with the Clifford branch, Mr. Farber visited that branch on several occasions in order to speak with all of the employees about the customer complaints and detrimental employee attitude issues. On one of his visits to the Clifford branch, Mr. Farber had warned the plaintiff, and

---

material *negating* the opponent's claim," Celotex, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "'show[s]'--that is, point[s] out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

[4] Because the plaintiff has failed to controvert the statement of material facts submitted by the defendant, all material facts set forth in the defendant's statement of material facts will be deemed admitted. *See* Local Rule 56.1. In addition, as all of the facts are deemed admitted, record references will be omitted.

all other employees, that if they did not improve, the only option left was to be let go.

In the fall of 2007, the Bank's board decided to make a change in the leadership of the Clifford branch. Specifically, the Bank decided to hire a new Branch Manager. As such, the Bank hired Janice Bevacqua who would be responsible for addressing and correcting the customer complaints, poor employee attitudes, and work deficiencies at the Clifford branch.

In December of 2007, after Ms. Bevacqua began working at the Bank's Clifford branch, she contacted several Bank customers in order to gain an understanding of why their experience at the Clifford branch was negative. From speaking with customers, Ms. Bevacqua learned that the way customers were treated by the Head Teller, namely the plaintiff, was a primary reason for customer dissatisfaction with the Clifford branch. It appeared that the plaintiff was not treating customers courteously.

Ms. Bevacqua subsequently learned that the plaintiff had also created an uncomfortable work environment for her co-workers. For example, the plaintiff had embarrassed Sheridan Ross and Justine Smith in front of customers, called Sheridan Ross stupid and blond many times, overwhelmed the other tellers with the work of waiting on customers by leaving her "closed"

sign up most of the day, and had required that the other tellers work their vacation schedules around the plaintiff's. As such, plaintiff's co-workers felt that the plaintiff was very nasty and demeaning to them.[5]

After Ms. Bevacqua learned that plaintiff was treating customers and her co-workers inappropriately, Ms. Bevacqua then discovered that the plaintiff was also not following Bank policy. More specifically, on January 4, 2008, Mrs. Kurtz, who had been a customer of the Bank for seventeen years, went to the drive through at the Clifford branch in order to cash a check. However, the plaintiff refused to carry out the requested transaction, and then embarrassed Mrs. Kurtz in front of other customers. The plaintiff's refusal to cash Mrs. Kurtz's check was a violation of Bank policy as Mrs. Kurtz had accounts at the Bank.[6]

Several days later, while the plaintiff was at lunch, the plaintiff's neighbor went to the Clifford branch seeking to cash a check. The teller denied the requested transaction because the plaintiff's neighbor did not have an account at the Bank, and cashing checks for a customer who does not

---

[5] One of plaintiff's co-workers even tried to transfer to a different branch so that she would not have to work with the plaintiff.

[6] As result of that incident, Mrs. Kurtz returned to the Clifford branch a few days later in order to close both her and her husband's bank accounts.

have an account at the bank is a violation of Bank policy. The plaintiff's neighbor then replied that the plaintiff always cashed her checks even though she did not have an account with the Bank. By cashing her neighbor's checks, the plaintiff was violating Bank policy.

Based on the foregoing, Ms. Bevacqua decided to terminate plaintiff's employment. Specifically, Ms. Bevacqua found that plaintiff was not consistently following Bank policy, and that the plaintiff was not treating customers or co-workers appropriately. As such, the plaintiff had created an uncomfortable environment at the Clifford branch, and Ms. Bevacqua thought that it would be best for the Bank's Clifford branch if plaintiff's employment was terminated.

Moreover, the plaintiff has no recollection of her age being mentioned when Ms. Bevacqua terminated her employment. In addition, the plaintiff's age was never mentioned as a reason for her discharge in any discussion she had with Mr. Farber, or Mary Ann Musho, the Human Resources Manager.

After plaintiff's employment at the Bank was terminated, Maria Alden was hired for the position as Head Teller. Ms. Alden, who was in her forties, held that position for several months until Sheridan Ross, who was fifty-eight years old, took over the position of Head Teller at the Clifford branch.

## IV. LEGAL ANALYSIS

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). Where, as here, there is no direct evidence of discrimination, age discrimination claims are analyzed under the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[7] *See Witcher v. Sodexho, Inc.*, 247 Fed. Appx. 328 , 330 (3d Cir. 2007).

First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 ( 2000) (citing *St. Marys Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). A *prima facie* case requires the plaintiff to establish four elements: (1) that she belongs to the class protected by the ADEA-employees above forty years old; (2) that she is qualified for the position; (3) that she suffered an adverse employment decision; and (4) evidence adequate to create an

---

[7] It is important to note that although the burden of production may shift during the *McDonnell Douglas* inquiry, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the employee. *See Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005).

inference that the employment decision was because of her age. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996); *Monaco v. American Gen'l Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004) (citing *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).

The fourth element may be satisfied if a plaintiff can show she was replaced by someone sufficiently younger as to create an inference of discrimination. *Monaco*, 359 F.3d at 300 (citing *Duffy*, 265 F.3d at 167). In respect of the "sufficiently younger" standard, "'there is no particular age difference that must be shown, but while different courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot.'" *Id.* at 307 (quoting *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir.1999)) (omissions in original). In addition, in *O'Connor*, "the Supreme Court cleared the way for other methods of proof as well, . . . holding that an ADEA plaintiff makes out a *prima facie* case of age discrimination with any evidence that creates an inference that the adverse employment decision was based on illegal discrimination against the plaintiff because of his age." *Burtman v. Lance*, No. 06-1507, 2008 U.S. Dist. LEXIS 21278, at *39 (M.D. Pa. Mar. 17, 2008) (citing *O'Connor*, 517 U.S. at 312). For example, in *Fitzpatrick v. National Mobile Television,* 364 F. Supp. 2d 483 (M.D. Pa. 2005)

11

(Munley, J.), the court noted that an employee may be able to satisfy the fourth element by showing the defendant terminated an older employee for a reason for which it would not have terminated a younger employee, and that under those circumstances the age of the older employee's replacement would be immaterial. *See* id. at 492 n.4 (citing *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 353-54 (3d Cir. 1999). If the plaintiff makes her *prima facie* showing, there is a presumption of discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 506 (citing *Burdine*, 450 U.S. at 254).

The burden then shifts to the defendant to rebut the presumption by "produc[ing] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves*, 530 U.S. at 142 (citing *Burdine*, 450 U. S. at 254). The defendant's burden is "relatively light." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). If the defendant produces evidence of a nondiscriminatory reason for the challenged conduct, the presumption "drops from the case." *St. Mary's Honor Ctr.*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 255).

The burden of production then returns to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason is

12

pretextual and "unworthy of credence." *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 256). To show that the defendant's rationale is pretextual, the plaintiff must adduce evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso*, 445 F.3d at 706 (quoting *Fuentes*, 32 F.3d at 764). It is not enough for the plaintiff to show that the defendant was " wrong or mistaken" in its action. *Id.* (quoting *Fuentes*, 32 F.3d at 764). Rather, to defeat summary judgment, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes, 32 F.3d at 765* (internal quotations and citation omitted) (bracketed material in original) (citing *Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)*; *Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 527, 531 (3d Cir. 1992)*; *Chauhan v. M. Alfieri Co., Inc., 897 F.2d 123, 128 (3d Cir. 1990)*); *see Tomasso, 445 F. 3d at 706* (citing *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467

(3d Cir. 2005)); cf. *id.* at 704 ("First, [the plaintiff] has shown sufficient implausibilities and inconsistencies in [the defendant's] primary rationales to avoid summary judgment. Second, a rational factfinder could dismiss the secondary reasons as pretextual, not because they played no role in [the plaintiff's] layoff but because they cannot explain the layoff sufficiently.").

Assuming *arguendo* that plaintiff would be able to establish a prima facie case, her ADEA claim would fail because she lacks evidence of pretext. Here, the Bank has articulated legitimate nondiscriminatory reasons for terminating plaintiff, namely that the plaintiff failed to follow Bank policy, and that the plaintiff created a miserable work environment as she was arrogant, nasty, and demeaning to other employees as well as to the customers at the Clifford branch. Thus, the defendants argue that the Branch Manager, Janice Bevacqua, decided to terminate plaintiff's employment, in order to improve customer image, profitability and employee attitudes at the Bank's Clifford branch.

The court finds that the record supports the defendant's asserted reasons for terminating plaintiff's employment. For instance, the record indicates that several customers told Ms. Bevacqua that the plaintiff did not treat them courteously and, as such, they were dissatisfied with the Bank's

Clifford branch. In addition, the record indicates that plaintiff was demeaning to her co-workers, namely Justine Smith and Sheridan Ross, by embarrassing them in front of customers. The plaintiff would also overwhelm them with the work of waiting on customers. Specifically, the plaintiff would have her "closed" sign up most of the day unless one of her friends came in, and then she would open her window just long enough to wait on her friends. Finally, it appears that plaintiff failed to follow Bank policy as indicated by the incident involving Mrs. Kurtz, when plaintiff refused to cash her check even though she had an account at the bank, and by cashing checks for her friends who did not have accounts with the Bank.

Moreover, a review of the record reveals that there is no indication that defendant's decision to terminate plaintiff was motivated by her age. In fact, the only evidence in the record to support plaintiff's allegation that she was terminated because of her age is the plaintiff's own testimony that she believes age to be the reason she was fired. However, the court cannot find that the plaintiff's mere belief that age was the reason for her termination makes the defendant's reasons for her termination unworthy of credence. *See Grove v. Admiral Peary Area Vocational-Technical Sch.*, 221 Fed. Appx. 101, 104 n.2 (3d Cir. 2007) ("Grove's 'proof' consists solely of self-serving

speculation about the reasons for his demotion and the unremarkable fact that Timothy Farabaugh's brother is a member of Admiral Peary's Board. No jury, on the basis of these scant proofs, could reasonably disbelieve Admiral Peary's articulated legitimate reason or conclude that age discrimination was more likely than not the true motivation behind its action."); *Cooper v. PricewaterhouseCoopers*, No. 07-1399, 2008 U.S. Dist. LEXIS 76041, at *12 (E.D. Pa. Sept. 30, 2008) ("Plaintiff's beliefs, without more, are insufficient to support a claim of pretext.").

In sum, the record is replete with evidence that plaintiff's employment was terminated because she failed to follow Bank policy, and created an uncomfortable environment at the Clifford branch due to her demeaning attitude towards employees and customers. Moreover, there is simply no evidence in the record to support a finding that the defendant's proffered reasons for terminating plaintiff were pretextual, and "unworthy of credence." Therefore, the court will grant the defendant's motion for summary judgment.

## V.  CONCLUSION

For the reasons elaborated above, **IT IS HEREBY ORDERED THAT:**

**(1)** the defendant's motion for summary judgment, (Doc. No. 29), be

**GRANTED**,

**(2)** the final pretrial conference scheduled for September 29, 2011 and the trial scheduled for October 31, 2011 are cancelled, and

**(3)** the Clerk of Court is directed to close this case.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE: September 23, 2011**
O:\shared\MEMORANDA\2008 MEMORANDA\08-2214-01.wpd